**Before the United States District Court for the Northern District of Ohio**

| | |
|---|---|
| **United States of America** | **Case Nos.** 4:19-cr-00267-SO-1 |
| Plaintiff | |
| | **Judge Oliver** |
| -vs- | |
| **George Kelly** | **Sentencing Brief and Motion for Variance** |
| Defendant | |

Defendant, George Kelly, by and through his attorney, Rhys Cartwright-Jones, respectfully submits this memorandum for this Court's consideration in fashioning a sentence that is sufficient, but not greater than necessary to comply with the purposes of sentencing set forth in 18 USC 3553(a)(2) and submits that in the furtherance of same a substantial variance is appropriate.

As he will tell the Court himself tomorrow, Mr. Kelly is very sorry for the conduct that lead to him being criminally charged and socially outcasted. He has tremendous regret for the pain that his conduct has caused his own children and extended family due to his absence as a father, partner, and income earner. Mr. Kelly understands that part of taking responsibility for his conduct includes facing the risk of a substantial prison sentence. However, based on the points that this brief proceeds to relate, the defense offers that a sentence to the time that Kelly has served while in custody on these charges is sufficient.

The defense agrees with the factual characterization of Mr. Kelly's conduct. On a

break from work as an over-the-road truck driver, he met with some friends at a firing range, rented a rifle and ammunition, and discharged that weapon in a safe, enclosed, and professionally supervised environment. Likewise, the defense agrees that Kelly has a disabling felony conviction.

Mr. Kelly does not dispute the accuracy of the Presentence Investigation Report's ("PSI") determination that pursuant to the United States Sentencing Guidelines as to his offense level and criminal history. As described below, however, this advisory guideline range is entitled to little weight as to this particular offense insofar as this offense does not fit into the heartland of typical firearms prohibition offenses. As well, the defense highlight's the PSI's indication that the facts of this cause may merit a variance. [R.E. 21, PSI: PageID#28.]

The defense offers that this cause merits a variance insofar as the cause does not fit into the heartland of the guidelines conduct—i.e. this is not a typical case under 18 USC 922, 24. As the Introduction to the Sentencing Guidelines acknowledges:

> The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

Sentencing courts have discretion, of course, to vary from the sentencing guidelines, provided doing so does not create an unnecessary disparity among similarly situated

defendants. *Dorsey v. United States*, 567 U.S. 260, 265, 132 S. Ct. 2321, 183 L. Ed. 2d 250 (2012). And the Supreme Court provides guidance on "how to strike that balance." *United States v. Boucher*, 937 F.3d 702, 708 (6th Cir.2019) , citing *Kimbrough* infra. So "[t]o avoid sentence disparities, the Guidelines provide a transparent and predictable sentencing range for defendants who fall within the heartland of average cases to which the Commission intends individual Guidelines to apply." Id., quoting *Kimbrough v. United States*, 552 U.S. 85, 109, 128 S. Ct. 558, 169 L. Ed. 2D 481 (2007); *Rita v. United States*, 551 U.S. 338, 351, 127 S. Ct. 2456, 168 L. Ed. 2d 203 (2007), quotations omitted. The *Boucher* court further explained—

> [w]hen a district court varies outside the guideline range, then, we expect the court to explain what distinguishes that defendant's case from a typical one. If the district court reasonably explains why the defendant's unique circumstances fall outside the heartland of cases affected by the relevant guideline, then the court's decision to vary . . . may attract greatest respect. Id. But if the district court fails to distinguish the defendant's circumstances from a mine-run case under the applicable guideline, then closer review may be in order. The reason for this closer review is simple—the more a sentencing court strays from the Guidelines in a mine-run case, the greater the risk that the defendant's sentence will create unfair disparities.

Id., citations and internal quotations omitted. Logically, given those principles, it is incumbent on a defendant facing sentence to provide a sentencing court an explanation of why that defendant's case is not a "heartland" case. And the cause before the court definitely does not fit into the heartland or mine-run or mill-run of typical firearms

3

cases.

Here, Application Note. 2 USSG 2k2.1 provides some guidance to what a heartland case under 18 USC 922, 924 might be—

> The firearm statutes often are used as a device to enable the federal court to exercise jurisdiction over offenses that otherwise could be prosecuted only under state law. For example, a convicted felon may be prosecuted for possessing a firearm if he used the firearm to rob a gasoline station. In pre-guidelines practice, such prosecutions resulted in high sentences because of the true nature of the underlying conduct. The cross reference at §2K2.1(c)(2) deals with such cases.

Similarly, recent summaries of convictions under Secs. 922 and 924 show that on a given year 10% of convictions have enhancements that indicate that the firearm came along with a related drug offense. [See U.S. Sentencing Commission, Quick Facts: Felon in Possession of a Firearm (2018), available URL: https://bit.ly/2RG2jJr.] The heartland case, indeed the purpose of Secs. 922 and 924, points to armed criminal conduct among felons more than simple handling of firearms.

Applying that policy, one can determine that this cause is not among the heartland of the guidelines. Kelly, between assignments as an over-the-road truck driver, met with some friends at a firing range, rented a rifle and ammunition, and discharged that weapon in a safe, enclosed, and professionally supervised environment. Granted, Kelly has a disabling felony conviction. But to be clear, the firearm, here, had nothing to do with any further criminal conduct.

18 USC 3553(a)(2)(A) – (D) addresses the fundamental considerations of a

4

federal sentence "...to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]" Following his arrest in Florida on May 11, 2019, George Kelly has remained in custody for, now, the better part of a year. Looking to the particular facts of this cause, the defense posits that a sentence no greater than the time Kelly has already served serves the purposes and principles of 18 USC 3553(a)(2)(A) – (D).

        Respectfully Submitted,

        *s/ Rhys B. Cartwright-Jones*
        **Rhys Brendan Cartwright-Jones, 0078597**
        42 North Phelps St.
        Youngstown, OH 44503-1130
        330-744-6454, tel.
        216-272-1938, cell
        866-223-3897, fax
        rhys@cartwright-jones.com
        For George Kelly

**Proof of Service**

  I caused to be delivered a copy of the foregoing to Atty. Katz and Atty. DeBaggis by way of the Court's ECF application.
        *s/ Rhys B. Cartwright-Jones*
        **Rhys Brendan Cartwright-Jones, 0078597**: